# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1900.

---

### SHEFFIELD, tax-collector, v. BOARD OF COMMISSIONERS OF THE DISPENSARY IN BLAKELY.

1. The commissioners for the management of the dispensary established under the act of December 16, 1897, in the town of Blakely are "county authorities" within the meaning of that portion of the general tax act of 1898 which imposes a tax on "dispensaries operated by county or municipal authorities."
2. The act last mentioned is, therefore, applicable to this dispensary, and, consequently, the commissioners can not lawfully operate the same without paying the taxes due the State. This is so without regard to the profits of the business.
3. The property of the dispensary is subject to sale under execution for the State's taxes.

Submitted May 18,— Decided June 5, 1900.

Injunction. Before Judge Sheffield. Early superior court. February 8, 1900.

*J. M. Terrell*, attorney-general, *John R. Irwin*, solicitor-general, and *W. D. Sheffield*, for plaintiff in error.
*Arthur Gray Powell*, contra.

LUMPKIN, P. J. On December 16, 1897, the General Assembly passed an act establishing a dispensary "in the town of Blakely, Early county, Georgia," for the sale of intoxicating liquors, and therein provided for the creation of a board of commissioners "for the management of said dispensary." The act provides for the appointment, by the judge of the superior court

1

of the Pataula circuit, of five discreet citizens of Early county, three of whom shall be citizens of Blakely, and that, when appointed, these commissioners shall constitute a body corporate to be known as the "Board of Commissioners of the Dispensary in Blakely." The act makes it the duty of this board to "maintain at some convenient place in the town of Blakely, Georgia, a dispensary for the sale of ardent spirits, malt liquors, wines, cider, and other intoxicants," and prescribes in detail the manner in which the business of the dispensary shall be conducted. Among other things, a manager, to be selected by the board, is required to "keep on hand in such dispensary, under the supervision of said commissioners, such ardent spirits" and other intoxicating liquors "as the said board may direct," and the manager must sell only for cash. The act further provides that the board of commissioners "may buy or contract for such property as are necessary to the purpose of this act, and shall have authority to encumber the same by mortgage or otherwise," and that "said dispensary shall be maintained solely by the proceeds of its sale." The 8th section of the act declares: "That said commissioners shall make semi-annual reports to the grand jury of Early county, showing a full financial statement of its affairs. The books of said board shall ever be subject to the reasonable inspection of any citizen of said county." The 11th section provides "That the proceeds of said dispensary shall be appropriated first to the payment of such liabilities as shall be incurred in its operation, and then, after retaining an amount sufficient to the maintenance of said dispensary, one half the remainder shall go into the general fund of the county treasury of Early county, and the other half shall be paid to the school fund of said county, to be managed by the board of education." See Acts of 1897, pp. 566–570. The general tax act for the years 1899 and 1900, approved December 22, 1898, imposes "Upon all dispensaries, operated by county or municipal authorities, to be paid by the authorities operating same," a yearly tax of $200. Acts of 1898, p. 24. The question for decision is whether or not the commissioners of the dispensary in Blakely are liable to the State for the payment of this tax for the year 1899. The trial judge held that they were not, but our opinion is to the contrary.

1. In support of the judgment excepted to, counsel for the defendant in error insists that these commissioners are neither county authorities nor municipal authorities within the meaning of the tax act. In our judgment, the dispensary is a *county* institution, and the commissioners are such functionaries as the General Assembly intended to cover by the language above quoted from the act of 1898. It is clear that the dispensary is a public institution. It can not possibly be regarded as a private enterprise. We do not think it is a State institution. It did not come into existence under a general law establishing a commission for the discharge of duties in which the public at large is interested. The members of the board are not amenable to any State official for misconduct in office, and no official of the State exercises any supervision over them. The act under which this board was created is purely local and special legislation, and has relation exclusively to the county of Early. The members of the board, as will have been seen, are required to make reports to the grand jury of that county; one half of the profits of the dispensary are to be paid into the general fund of the county treasury, and the other half to the board of education of that county. These things characterize this dispensary as a county institution. The mere location of it in the town of Blakely and the requirement that three of the commissioners shall be citizens of that town would not, of course, warrant the conclusion that it was a municipal one; certainly not in view of the fact that under the terms of the act the board of commissioners is in no way responsible to or under the control of the town government.

Having shown, as we think clearly, that the dispensary is a county institution, the next question is: Are these commissioners "authorities" and, as such, subject to the tax in question? They are not, of course, authorities in the sense of being county officers, as the term is commonly understood, invested with powers incident to office-holders of that character; but we think it no strain to say that they are "authorities" in the broad and comprehensive sense in which that word, as employed in the tax act, was evidently used. At the time of the passage of this act there was no State dispensary for the sale of intoxicating liquors, nor has one since been established; and

we are quite sure that it was the purpose of the General Assembly to impose the tax in question upon every dispensary operated in the interest and for the benefit of the citizens of either a county or municipality. It could not have been in legislative contemplation that any dispensary had been or would be established in or for any political division of the State other than counties, cities, towns and villages. When, therefore, the words "operated by county or municipal authorities" were employed, we have no doubt at all of the intention to make the same exhaustively embrace all persons who might be authorized to conduct a dispensary in the interest of the inhabitants of any county or municipality.

2. Another position taken by counsel for the defendant in error is, that the tax act was not intended to be applicable to these commissioners, for the reason that if sufficient money to pay the tax should not be earned in the operation of the dispensary, they would themselves be individually liable for the payment of such tax. We are satisfied that this contention is not maintainable. This dispensary, as has been seen, was established under an act passed in 1897. It was not at that time the legislative policy to tax dispensaries. See Acts of 1896, pp.. 21, 24, prescribing the taxes to be levied for the years 1897 and 1898. Commissioners v. Thornton, 106 Ga. 106. It was, therefore, within the power of the commissioners to begin to operate the dispensary without making any arrangement or provision for raising money with which to pay a tax to the State. At the session of the General Assembly in 1898, however, the legislative policy with respect to taxing institutions of this kind underwent a change. The lawmaking power then distinctly declared that for each of the years 1899 and 1900 they should pay a tax of $200. This act placed dispensary commissioners on the footing of liquor-dealers. Presumably, the Early county dispensary began to be operated in 1898. It was certainly in operation in the month of January, 1899. Section 4 of the tax act of 1898 (page 27) made the prepayment of the tax an indispensable prerequisite to lawfully beginning in either 1899 or 1900 the business of conducting a dispensary. If, then, when the first day of January, 1899, arrived, the commissioners were without funds derived from their previous operation of the dis-

pensary with which to pay the State tax, it was incumbent upon them either to raise the money necessary for this purpose and therewith pay this tax, or else suspend operations.   They could not lawfully carry on the dispensary without paying the tax ; and if, because of a want of funds, or because of inability to borrow or unwillingness to advance the same, they were not in a position to meet the positive requirement of the act of 1898, they ought to have refrained from selling intoxicating liquors. There was nothing for them to do but pay the State's demand or close the dispensary.   Under the broad provisions of the act creating the dispensary, it would seem that the commissioners may lawfully borrow money with which to pay the State tax and secure its repayment by a mortgage upon their stock in trade.

3. In this connection we will dispose of the only remaining question in this case, which is, whether or not the property of the dispensary is subject to sale under an execution for the tax due the State.   We think it is.   As will have been observed from the above-recited provisions of the dispensary act, the board of commissioners is in many respects placed upon the footing of a trading corporation.   As such, it can buy or contract for property and encumber the same by mortgage or otherwise. That is, the board may deal with the goods belonging to the dispensary as a trading corporation does with its goods.   If the board, in pursuance of its business as a dealer in liquor, can create liens on its stock in trade, why may not the State, having classed and dealt with it, relatively to the taxes due from it, as such a dealer, enforce the collection of these taxes by execution, as in other cases where taxpayers are in default?   No good reason why this may not be done occurs to us, and in holding that there is none we feel convinced that we are but giving effect to the true legislative intent with regard to this matter.

*Judgment reversed.   All the Justices concurring, except Fish, J., who was absent.*