Submitted on briefs February 9, affirmed April 25, 1922.

# BOARD OF TRUSTEES *v.* OREGON CONSISTORY No. 1.

### (206 Pac. 301.)

**Schools and School Districts—Incorporated Trustees of Church School Held Empowered to Sell Property Conveyed in Trust to Them for the School—"Dispose of."**

1. Where land conveyed to a bishop and his successors in trust, without any restrictions as to the use thereof, and paid for with funds of a church for which it was presumably purchased, was conveyed by the bishop as trustee to five persons as members of the board of trustees of a school established on the land, authorized by a resolution of a church convention to "manage, expend and dispose of" all property held in trust by the bishop, the bishop's deed reciting that the land was conveyed to him in trust, and that he held it in trust for such school, a contract for the sale of the land by such trustees, as a corporation created pursuant to the resolution to which they conveyed it in trust for the perpetual use and maintenance of the school, was enforceable as a contract to sell for the use and benefit of such school, as against the objection that the deeds obligated the corporation to occupy the land for school purposes and prohibited the sale thereof, the bishop and those in privity with him being estopped by the recitals in his deed from denying that he possessed a more restricted estate, and being also prevented from prescribing restrictions not authorized by the church's resolution, which in granting power to the trustees to "dispose of" the land accompanied with a grant of power to "manage" and "expend" granted power to sell.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

This is a suit brought by the Board of Trustees of St. Helen's Hall, a corporation, against Oregon Consistory No. 1, a corporation, to enforce the specific performance of a contract for the sale and exchange of real property. The trial court overruled a demurrer to the complaint. The defendant refused to plead further; and thereupon the court entered a decree for the enforcement of the contract. The defendant appealed.

The facts pleaded in the complaint and by the demurrer assumed to be true are as follows: Oregon Consistory No. 1 is the owner of ten lots in an addition to the City of Portland known as Cedar Hill. In and prior to 1882 the Protestant Episcopal Church of the United States, a religious association, was organized and established as a church and exercising its functions within the State of Oregon, being represented by the

"Right Reverend B. Wistar Morris, D. D., as Bishop of said Church for the Diocese of Oregon, and having organized and unorganized parishes and missions therein with a large number of communicants, and ever since then said Church has and does now maintain and exercise its discipline, rites and services therein."

Prior to 1882 the church, as a part of its religious church work, established and has since maintained in the City of Portland a school for the education of girls, known as St. Helen's Hall. At that time the church had acquired for the special use and maintenance of the school real and personal property of considerable value, the title to which was then and for some years thereafter held in the name of B. Wistar Morris as Bishop of the church for the diocese of Oregon, in trust for the church.

On January 19, 1882, Donald Macleay, for the consideration of $12,000, conveyed by warranty deed to

"Right Reverend B. Wistar Morris, D. D., Bishop of Oregon and to his successors in office, in trust, and their assigns forever" block 3 in Johnson's Addition to the city of Portland, "to have and to hold the same to the said Right Reverend B. Wistar Morris, D. D., Bishop of Oregon and to his successors in office, in trust, and their assigns forever."

B. Wistar Morris as bishop "and as trustee" gave to Macleay a mortgage for $7,000 for that much of the purchase price and paid the remainder in cash. Subsequently Bishop Morris "acting as trustee of said trust" paid the mortgage in full. The funds used by Bishop Morris "in purchasing and paying for said property, was money belonging to said church, which money said Bishop held in trust for it."

On June 28, 1890, the Protestant Episcopal Church of the Diocese of Oregon in convention assembled, with the concurrence of Bishop Morris, passed a resolution appointing two clergymen and two laymen, together with Bishop Morris, to be known as the Board of School Trustees, with power

"to take, hold, possess, manage, expend, and dispose of all the property held in trust by the Bishop of said Diocese, to wit: said B. Wistar Morris, aforesaid, on the 28th day of June, 1890, for the use and benefit of the aforesaid school for girls, known as St. Helen's Hall."

The five persons so chosen accepted the appointment and agreed to administer the trust; and thereupon on December 16, 1890, Bishop Morris conveyed to the five persons so chosen block 3 in Johnson's Addition "in trust for the perpetual use and maintenance of the aforesaid school for girls known as St. Helen's Hall." This deed contains the following recitals:

"Whereas, by a certain deed of conveyance executed on the 19th day of January, A. D. 1882, and recorded among the aforesaid records in Book 51, at page 352, Donald Macleay conveyed to the Right Reverend B. Wistar Morris, Bishop of Oregon, and to his successors in office in trust and their assigns forever the following described real property, to wit: [Description].

"Whereas the said Right Reverend B. Wistar Morris accepted the said conveyance and continuously thereafter held the real property therein described in trust for the use and benefit of St. Helen's Hall aforesaid, and has caused to be constructed thereon a building for the use of the same."

The resolution passed by the church convention on June 28, 1890, authorized the five trustees to become incorporated pursuant to the laws of Oregon under the name of "The Board of School Trustees," with the rights, powers and duties granted and specified by the resolution; and, accordingly, on December 18, 1890, the five persons formed a corporation in conformity with the resolution and with power,—

"To take, hold, possess, manage, expend and dispose of the real and personal property hitherto held in trust by the said Right Reverend Benjamin Wistar Morris, now Bishop of the Diocese of Oregon, for the use and benefit of the school for girls known as St. Helen's Hall in the City of Portland, * * and all other property real and personal, which the said Corporation may from time to time receive or acquire for the use and benefit of the said schools, or of either of them."

On December 19, 1890, the five persons, to whom Bishop Morris had conveyed block 3 in Johnson's Addition, transferred by deed to "The Board of Trustees" a corporation, block 3 in Johnson's Addition "to be held in trust for the perpetual use and maintenance of the aforesaid school for girls known as Saint Helen's Hall."

On July 15, 1907, pursuant to a resolution duly passed on June 14, 1906, by the Protestant Episcopal Church of the Diocese of Oregon in convention assembled, the plaintiff corporation was duly incorporated and organized by seven persons who had been

duly elected by the convention as the Board of Trustees of St. Helen's Hall

"to take, hold, possess, manage, expend and dispose of the real and personal property hitherto held in trust by the Bishop of the Diocese or by the said corporation 'The Board of Trustees,' in trust for the use, benefit and maintenance of said school for girls known as St. Helen's Hall."

On May 11, 1908, the Board of School Trustees, a corporation, pursuant to the order and direction of the church conveyed to the Board of Trustees of St. Helen's Hall, a corporation, block 3 in Johnson's Addition; and plaintiff now holds the fee-simple record title to this land for the use, benefit and maintenance of the school for girls known as St. Helen's Hall.

Soon after the conveyance of block 3 in Johnson's Addition from Macleay to Bishop Morris, the latter as trustee caused to be constructed on the land suitable buildings for occupancy as a school for girls, and until about the year 1914 a school for girls known as St. Helen's Hall was maintained by B. Wistar Morris as bishop of the church and by his successors the Board of School Trustees and the Board of Trustees of St. Helen's Hall. In 1914, the school buildings were destroyed by fire; and, not possessing financial means with which to rebuild, the plaintiff purchased for the price of $110,000 other property in the City of Portland upon which there is a brick building suitable for the school. The plaintiff was able to pay only a portion of the purchase price and for that reason gave to the vendor a purchase money mortgage for $92,000; and since the purchase of this property the school for girls has been and is conducted in the brick building so purchased.

103 Or.—40

Block 3 in Johnson's Addition is now encumbered by a mortgage in the sum of $15,000 due June 17, 1922. The mortgage is for money borrowed and applied by plaintiff for the use of the school. The property is also encumbered by city liens amounting to $600. The land is of the reasonable value of $125,000, but it does not produce any income. The plaintiff has no funds, and it cannot pay the encumbrances except by a sale of the property.

On August 15, 1921, the plaintiff agreed to sell and convey to the defendant by a sufficient deed free from encumbrance block 3 in Johnson's Addition for $65,000 and for the ten lots in Cedar Hill, which property is now assessed for the purpose of taxation at the value of $45,000 and is of the reasonable market value of $60,000. The defendant agreed to purchase block 3 and to make the payment and conveyance mentioned.

The defendant refused to carry out the contract, claiming that the deed from Bishop Morris to the five persons and the deed from those five persons to the Board of School Trustees, a corporation, oblige the plaintiff to occupy the land as a school for girls and that they prohibit the sale of the land.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Dolph, Mallory, Simon & Gearin.*

For respondent there was a brief over the name of *Mr. W..T. Slater.*

HARRIS, J.—1. It will be observed that the deed from Macleay to Bishop Morris is a conveyance to the latter "and to his successors in office in trust and their assigns forever." This conveyance was not the

consummation of a gift, but it was a purchase. The moneys with which the purchase was made were the moneys of the church. The conveyance was not made upon any express condition, nor with any specified limitation. The grantor did not attempt to reserve to himself any right whatsoever. The conveyance from Macleay divested him and his heirs of all interest in the property. The fee-simple title was conveyed to Bishop Morris "in trust"; and it is conceded that the church was the beneficiary. The conveyance from Macleay is devoid of the slightest suggestion of any attempt to fetter the land with a restriction obliging Bishop Morris, as trustee, perpetually to occupy the land for any specified use; and hence it may be said that after the delivery of the Macleay deed the church as the beneficial owner could, for aught that appears in the deed standing alone, have caused the land to be leased or mortgaged or sold the same as it could have leased or mortgaged or sold or otherwise disposed of any other land owned by the church.

The controversy between the parties arises out of the *habendum* clause appearing in the deed from Bishop Morris to the five persons appointed to serve as the Board of School Trustees, and in the conveyance from those five persons, constituting a board called the Board of School Trustees, to the corporation known as the Board of School Trustees. Attention has been directed to the recitals contained in the deed executed by Bishop Morris. One recital declares that Macleay conveyed to Bishop Morris "in trust," and another recital asserts that Bishop Morris accepted the conveyance and held the property "in trust for the use and benefit of St. Helen's Hall." These recitals are in perfect agreement with the construc-

tion which we have placed upon the deed from Macleay. By the recitals written in the deed signed by Bishop Morris, he and those in privity with him are estopped from denying that he possessed an estate more restricted than the one recited: *Bayley* v. *McCoy,* 8 Or. 262. See also 39 Cyc. 226.

The conveyance from Bishop Morris was authorized by the resolution adopted June 28, 1890. That resolution on its face in express terms declares that the persons to whom the conveyance shall be made shall have power to "expend and dispose of" the property; and the same resolution empowers the same five persons to organize a corporation with power, among other things, to "expend and dispose of" the property. The church convention passed the resolution on the assumption that it had the right to empower Bishop Morris, the trustee, to expend and dispose of the land for the use and benefit of the school for girls, known as St. Helen's Hall. The church convention did have that right. The five persons accepted the trust defined by the resolution and agreed to take, hold, possess, manage, expend and dispose of the property "for the use and benefit of the aforesaid school for girls, known as St. Helen's Hall." The grant of power to "dispose of" accompanied, as it is with a grant of power to "manage" and "expend" is a grant of power to sell: 2 Words and Phrases (2 Series), 81. Bishop Morris was simply a trustee, and, even though it be assumed that he intended to convey the property to the five persons upon a trust more restricted than that contemplated by the church or than that originally imposed upon him, he could not have done so. If the church intended by its resolution to authorize and direct the conveyance of the land to the five persons with

power to expend or dispose of it, and the resolution in plain language declared that such was the intention, then Bishop Morris as trustee could not have prevented the carrying out of that intention by prescribing other and different restrictions upon the estate conveyed to the five persons: *Dickerson's Appeal,* 115 Pa. St. 198 (8 Atl. 64, 2 Am. St. Rep. 547); 26 R. C. L. 1207; 39 Cyc. 92.

Moreover, the language of the *habendum* clause, when read in the light of the recitals and the resolution, does not necessarily and inevitably mean that the deed from Bishop Morris imposed a trust requiring the land perpetually to be occupied as a school for girls. It is not necessary to attempt to decide what construction should be placed upon the words in the *habendum* clause if they stood alone; for the language of the *habendum* clause, when read in the light of the recitals and resolution, may be so construed as to be in harmony with the construction which we have placed upon the Macleay deed and the resolution passed by the church convention on June 28, 1890.

Furthermore, it must not be forgotten that the church in convention assembled elected seven persons as a Board of Trustees of St. Helen's Hall, and that "pursuant to a resolution duly passed" by the convention those seven persons formed the Board of Trustees of St. Helen's Hall, a corporation, to take, hold, possess, manage, expend and dispose of the land "in trust for the use, benefit and maintenance" of St. Helen's Hall. The land was conveyed to the last-named corporation which, pursuant to the resolution, had been formed with power to "expend and dispose of" the land. The plaintiff is of course a mere trustee, and under the terms of the trust it is

obliged to use the proceeds of the sale for the use, benefit and maintenance of St. Helen's Hall. The Macleay deed does not require the perpetual occupancy of block 3 in Johnson's Addition for a school. The resolution appointing the five persons as a board to be known as the Board of School Trustees does not require the perpetual occupancy of the land for a school. The resolution by which the seven persons were elected as the Board of Trustees of St. Helen's Hall, and pursuant to which the plaintiff corporation was formed, does not require the perpetual occupancy of the land for a school. Upon the contrary every resolution passed by the convention defining the power of the trustee uses the language "expend and dispose of" the land, for the use and benefit of the school. Regardless of the construction placed upon the *habendum* clause in the deed from Bishop Morris and in the deed executed by his immediate grantees, the authority given by the church, the beneficiary and real owner of the land, enabled the plaintiff to pass a good title to the defendant, since as we have already pointed out the Macleay deed did not attempt to restrict the use of the land and the trustee could not alone add qualifications to the trust.

We understand that the "express assent of the Diocesan Convention to the making of this sale, * * has been given"; and hence it is not necessary to ascertain what the result might be if such assent had not been given.

The land was purchased with church funds, and presumably it was purchased "for the use and benefit of St. Helen's Hall." It can be sold "for the use and benefit of St. Helen's Hall." The plaintiff has made a contract to sell the land "for the use and benefit of

St. Helen's Hall.''    The plaintiff can pass a good title to the defendant; and consequently the contract is enforceable.    The decree is affirmed.    AFFIRMED.