354

WRIGHT, Comptroller-general, *v.* FULTON COUNTY *et al.*

No. 7158.   October 19, 1929.

*George M. Napier, attorney-general, T. R. Gress, assistant attorney-general,* and *Troutman & Troutman,* for plaintiff in error.

*Charles B. Shelton, Ralph H. Pharr,* and *Henry Reeves,* contra.

Hines, J.   ■   It is well settled by its decisions that this court will not declare an act of the legislature unconstitutional and void unless the repugnancy between the act and the constitution is clear and palpable. This court will never set aside a legislative enactment in a doubtful case. This principle is especially applicable in cases where the constitutionality of tax acts is questioned. *Wright* v. *Hirsch,* 155 *Ga.* 229 (116 S. E. 795).

■   The county insists that the act of August 24, 1927, which imposes upon each distributor of motor-fuels engaged in such business in this State an occupation tax of 4 cents per gallon for each and every gallon of such fuel imported and sold within this State, or imported and withdrawn for use within this State, or manufactured, refined, produced, or compounded within this State, and sold for use or consumption within this State, or used and consumed within this State by the manufacturer, refiner, producer, or compounder, is unconstitutional and void because it violates article 3, section 7, paragraph 8, of the constitution of Georgia, which declares in part that "No law or ordinance shall pass which . . contains matter different from what is expressed in the title thereof." The specific contention is that the title of the act imposes a tax of 3-1/2 cents per gallon on motor-fuels, whereas the body of the act imposes a tax of 4 cents on gasoline and 1 cent on kerosene; that the title levies a tax only upon fuel distributors engaged in business, while the body levies a tax upon all fuel distributors whether engaged in business or not; that the title attempts to levy an occupation tax upon all distributors of motor-fuels and kerosene engaged in business in this State, while the body in sections 1 and 1(b) attempts to levy a tax upon a political subdivision which is not engaged in business, but which merely withdraws its own fuel for its own use, and that there is nothing in the title of the act to indicate that a political subdivision of the State would be required to pay an occupation tax.

The title of this act is as follows: "An act providing for an occupation tax upon all distributors of motor-fuels and kerosene engaged in business in this State, distributing two and one half cents per gallon of said motor-fuel tax for use in construction of the State-aid system of roads, and one cent to the several counties of this State; requiring such distributors to register, make returns, and give bond; providing penalties for violations of this act; and for other purposes." It is insisted that this caption states the amount of the occupation tax to be levied under it at 3-1/2 cents per gallon. This contention is not well founded. The title of the act first recites that it provides for an occupation tax upon all distributors of motor-fuels and kerosene engaged in business in this State. So far the title does not fix the amount of tax to be levied. Under this part of the caption the legislature could in the body of the act fix the tax without offending the above provision of the constitution. But it is insisted that the provision of the caption referring to the distribution of 2-1/2 cents per gallon of said tax for use in the construction of the State-aid roads, and 1 cent thereof to the several counties of this State, limits the total amount of the tax to be levied to the sum of the two portions of the tax thus distributed. This reasoning is not sound. The title of this act states that its purpose is to levy an occupation tax upon all distributors of motor-fuels and kerosene engaged in business in this State, without specifying the amount of such occupation tax. It then states that there is to be a distribution of 2-1/2 cents per gallon for use in construction of roads and 1 cent to the several counties. The provision for such distribution was not intended to fix or indicate the total amount of the tax, but was intended to put the members of the legislature on notice that 2-1/2 cents per gallon of whatever tax was imposed in the body of the act would be used in the construction of the State-aid road system, and that 1 cent per gallon of such tax, as fixed by the body of the act, would go to the counties of the State. The imposition of the tax and the distribution thereof or of portions thereof are separate and distinct things. It can not reasonably be said that the provisions in the title of this act for the distribution of 2-1/2 cents per gallon of said tax for road purposes and of 1 cent thereof to the several counties were intended to indicate or fix the amount of the tax to be imposed by the body of the act. It follows that it can not be held that section 2 of the act,

which imposes upon distributors 4 cents per gallon for each and every gallon of motor-fuel distributed by them, and section 2-a of the act, which imposes a tax of 1 cent per gallon on kerosene distributed by them, contain matter different from what is expressed in the caption.

It is next insisted that the caption of the act recites that it is one "providing for an occupation tax upon all distributors of motor-fuels and kerosene engaged in business in this State," and that this provision of the title is not broad enough to cover the imposition of an occupation tax upon political subdivisions of this State. This position is not sound. The caption states that the purpose of this act is to impose an occupation tax upon all distributors engaged in the business of distributing these products. The expression "all distributors" is broad enough to cover political subdivisions of the State. It is true that, if the body of the act had not gone further in its language in imposing the tax than the above language of the caption, the courts would not construe the act to embrace political subdivisions of the State. In other words, the act must be broad enough in its terms to show clearly that it was the intention of the legislature to impose a tax on such subdivisions; and if this does not clearly appear from the terms of the act, the courts would not construe it to impose an occupation tax upon such political subdivisions. Where, however, the words of the caption indicate the imposition of an occupation tax upon all distributors engaged in business in this State, and the body of the act defines distributors as including political subdivisions of the State, and clearly imposes such tax upon subdivisions, the act will not be declared unconstitutional because it contains matter different from what is expressed in the title.

This section of the constitution does not require that the title should contain a synopsis of the law. *Martin* v. *Broach, 6 Ga.* 21, 27 (50 Am. D. 306). The general object of the law is all that need be indicated by the title. *Howell* v. *State, 71 Ga.* 224, 227 (51 Am. R. 259). Minute details should be omitted. Provisions germane to the general subject-matter embraced in the title of an act, and which are designed to carry into effect the purpose for which it is passed, may be constitutionally enacted therein, though not referred to in the title otherwise than by the use of the words "and for other purposes." *Banks* v. *State,* 124 *Ga.* 15 (52 S. E.

74, 2 L. R. A. (N. S.) 1007). A title which reasonably expresses the general subject of legislation covers all matters properly connected with the general subject and germane thereto. *Marlin* v. *Broach*; *Howell* v. *State,* supra; *Davis* v. *Warde,* 155 *Ga.* 748, 771 (118 S. E. 378) ; *Wilson* v. *Supreme Forest,* 156 *Ga.* 403, 407 (119 S. E. 394). Titles exceedingly brief, general, and indefinite have been held sufficient. *Brown* v. *State,* 73 *Ga.* 38 ; *Plumb* v. *Christie,* 103 *Ga.* 686, 700 (30 S. E. 759, 42 L. R. A. 181). Under the caption of an act "to provide for the collection of special taxes imposed by law on dealers in spirituous or malt liquors, or intoxicating bitters, and for other purposes," a provision in the body that upon a failure to pay such tax a dealer could be indicted and punished for a misdemeanor was not obnoxious to this part of the constitution. *Brown* v. *State,* supra.

We can see no valid reason why the legislature in the body of an act can not define words or terms used in the caption. This is now very common in legislative practice. So where the legislature in the caption of an act recites that its purpose is to levy an occupation tax on all distributors engaged in business in this State, it could in the body of the act constitutionally define the word "distributors" and the expression "engaged in business," without thereby making the act obnoxious to this provision of the constitution. Definitions in the body of the act of words or general terms appearing in the caption do not infringe this constitutional provision. So under the caption of this act it was competent for the legislature in the body of the act to define the expression "all distributors of motor-fuels and kerosene engaged in business in this State," and to declare that this term should embrace political subdivisions of the State, although such subdivisions were not engaged in selling such products to the public for gain, but were merely importing and withdrawing them from the tank-cars or other original containers or packages, in which they were imported for their own use in this State. In *Tarver* v. *Albany,* 160 *Ga.* 251 (127 S. E. 856), this court held that the caption, "An act providing for the annual registration of motor-vehicles and motorcycles," etc., was broad enough to cover the registration of all motor-vehicles and motorcycles, including those belonging to and used by municipal corporations. It was held in *Lee* v. *State,* 163 *Ga.* 239 (135 S. E. 912), that the title of this act was broad enough to authorize a provision making penal

the use of a number-plate not furnished by the Secretary of State, for the reason that this provision was germane to the object of the act, directly tending to make the provisions of the act effective. So we are of the opinion that this act is not unconstitutional for the reason that it infringed the above constitutional provision.

This act is further attacked upon the ground that it violates paragraph 2 of section 6 of article 7 of the constitution of this State, which provides that "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers, and pay debts heretofore existing; to pay the county police, and to provide for necessary sanitation." 5 Park's Code, § 6562. It is apparent from a casual reading of this section that it does not impose any limitation upon the power of the State to levy taxes. It imposes only a limitation upon the power of the legislature to authorize the counties of this State to levy taxes. It in no way interferes with the general power of the State to impose taxes. This act does not undertake to authorize the counties of the State to levy any tax. It does not authorize them to levy the occupational tax therein provided for. The State in its sovereign capacity imposes this occupational tax. For this reason the act in no way conflicts with this constitutional provision. But it is insisted that the counties can not expend any of their funds for any purposes except those mentioned in this provision of the constitution. Granting for the sake of the argument that this proposition is correct, the legislature can authorize counties to levy taxes for constructing, improving, and keeping in repair roads and bridges, and for educational purposes. We see no valid reason why the legislature can not require counties to levy taxes for these purposes, where such levies are not otherwise prohibited by the constitution of this State. This being so, there is no constitutional impediment in the way of the legislature imposing a property tax upon the property of counties, and an occupational tax on them based on and measured by units of property acquired and used by them in the conduct of the business of the counties, especially when the proceeds of the tax are applied to some or all of the above purposes. If the counties can use the public funds for purchasing motor-fuels

for county purposes (which question is not now for decision), we see no valid reason why they could not use such funds to pay an occupational tax imposed on them by the legislature for the operation and conduct of such business. It is therefore our opinion that this act does not infringe the constitutional provision set out and dealt with above.

■ It is further urged that this act violates paragraph 1 of section 2 of article 7 of the constitution of this State, which declares that "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Civil Code (1910), § 6553. The ground upon which this attack upon the constitutionality of this act is put is that the classification for taxation of distributors of motor-fuels, as contained in said act, is arbitrary, unreasonable, and unnatural, because it seeks to place in the same class and tax under one head distributors of motor-fuels engaged in business as an occupation and for profit, and a political subdivision of the State not engaged in business, which uses such fuels for a purely governmental purpose. It is conceded that a classification for the purposes of taxation must be reasonable, and not unreasonable or arbitrary. *Carroll* v. *Wright,* 131 *Ga.* 728 (63 S. E. 260) ; *United Cigar Stores Co.* v. *Stewart,* 144 *Ga.* 724 (87 S. E. 1034) ; *Wright* v. *Hirsch,* supra. This statute declares in its title that it is "An act providing for an occupation tax upon all distributors of motor-fuels and kerosene engaged in business in this State." The first section of the act defines the words "distributors" as including "any person, association of persons, firm, corporation, and political subdivision of this State," that (a) imports or causes to be imported, and sells at wholesale or retail or otherwise within this State, any of the fuels or kerosene specified in said act, (b) imports or causes to be imported and withdraws for use within this State, by himself or others, any of such fuels or kerosene from the tank-car or original container or package in which they are imported into this State, and (c) manufactures, refines, produces, or compounds any of such fuels or kerosene within this State, and sells the same at wholesale or retail or otherwise for use or consumption therein. Acts 1927, p. 104. Here the classification is of all distributors of motor-fuels. In its definition of the word "distributors" the act embraces all

persons, firms, corporations, and political subdivisions of this State, who import and sell at wholesale or retail or otherwise within this State any of such products, or who import and withdraw for use within this State, by himself or others, any of such products from the tank-car or original container or package in which such products are imported, or who manufacture, refine, produce, or compound any of such products within this State, and sell the same at wholesale, retail, or otherwise within this State for use or consumption therein. The classification is thus uniform. It embraces all distributors of these products, whether engaged in the business for profit arising from the sale of such products or engaged for the purpose of acquiring such products for their own use. It does not embrace only distributors engaged in the business for profit and political subdivisions of the State engaged in the business of procuring such products for their own use without profit derived from the sale thereof. It embraces all persons, firms, corporations, and political subdivisions of this State, engaged in importing and selling said products, or procuring said products for their own use without the purpose of making profit from the sale thereof. We can not see how such a classification can be held to be unreasonable and arbitrary, unless it can be said that the imposition of an occupation tax on a political subdivision of the State is arbitrary and unreasonable.

This brings us to consider and decide the important question whether this classification is arbitrary or unreasonable because it imposes upon political subdivisions of the State an unlawful tax. In its last analysis the question for decision under the facts is this: Can the State tax the property of counties or impose upon them an occupational tax when they engage in some line of business incidental to their governmental functions? The constitution of this State declares, in paragraph 1 of section 1 of article 4, that "The right of taxation is a sovereign right, inalienable, indestructible, is the life of the State, and rightfully belongs to the people in all republican governments." Civil Code (1910), § 6462. As we have seen, the constitution declares that "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." This court has construed this to mean that all property within the limits of the State is subject to taxation, except such as

the constitution expressly authorizes the legislature to exempt from taxation. *Georgia Railroad &c. Co.* v. *Wright,* 125 *Ga.* 589 (54 S. E. 52). In paragraph 2 in the same section and article of the constitution it is provided that "The General Assembly may by law exempt from taxation all public property." Civil Code (1910), § 6554. Construing together the provisions of paragraphs 1 and 2 of this section, the constitution does not prohibit the taxing of public property. *Penick* v. *Foster,* 129 *Ga.* 217 (7) (58 S. E. 773, 12 L. R. A. (N. S.) 1159, 12 Ann. Cas. 346). A part of the constitution of Illinois provided that the property of counties might be exempted from taxation by a general law. In construing this provision the Supreme Court of Illinois held that by implication such property was liable for taxation, in the absence of any law exempting the same. Cook County *v.* Chicago, 103 Ill. 646. Again that court held that under this provision the property of municipal corporations was subject to taxation, unless exempted by statute. In re Swigert, 123 Ill. 267, 270 (14 N. E. 32). The same court, in Sanitary District of Chicago *v.* Hanberg, 226 Ill. 480 (80 N. E. 1012), held, under that provision of the constitution and a statute exempting from taxation "all market houses, public squares, or other public grounds, used exclusively for public purposes," that the lands of a sanitary district of Chicago, including its right of way and channel, and used exclusively for drainage purposes in carrying off sewage, were not subject to taxation, but that such portions of the land in said district as were leased by the city were subject to taxation. Again, in Sanitary District of Chicago *v.* Gibbons, 293 Ill. 519 (127 N. E. 691), the court held that "The exemption from taxation of public property of the State, county, or municipal corporation is a question of public policy; the power to tax such property exists. . . The constitution of the State plainly implies that property of municipal corporations is taxable unless exempted by law, and statutes exempting such property from taxation are to be strictly construed."

Under the above provision of the constitution of this State, the legislature is expressly authorized to exempt public property from taxation, and there is a necessary implication therefrom that the legislature can tax all public property of municipalities and counties. The power to exempt from the burden of taxation necessarily implies the power to impose such taxes. Independently of

the implication that public property is subject to taxation, arising from the provision of our State constitution authorizing the legislature to exempt it from taxation, the legislature can generally subject public property to taxation. The general rule is that public property of the State and its political subdivisions is not subject to taxation under general constitutional and statutory provision prescribing that all property is taxable. *Penick* v. *Foster,* supra. Public property is always presumed to be exempt from the operation of general tax laws, because it is reasonable to suppose that it was not within the intent of the legislature to make public property subject to them. This is the case as to property belonging to the State, and its political subdivisions, such as municipalities and counties, which property is held by it or them for public purposes. It can hardly be presumed that the State intended to levy a tax upon its own property to raise revenue for itself. So it would not be presumed that the legislature intended to authorize a municipality to levy a tax upon its own property for the purpose of raising municipal revenue, nor would it be presumed that the legislature intended to authorize counties to levy a tax upon their own property to raise county funds. This is so because the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levies. In such cases it would be taking money out of one pocket of the State or its political subdivisions, and putting it in another pocket. But this is not the case where the State permits its political subdivisions to levy taxes upon the State's property for the purpose of raising revenue for such subdivision; nor is this the case where the State levies taxes upon the public property of such subdivisions for the purpose of raising funds for the State.

By many authorities the State, independently of the above implication arising from the constitutional grant of authority to the legislature to exempt public property from taxation, may expressly impose or authorize such levies upon public property, in the absence of constitutional exemption. Trustees *v.* Trenton, 30 N. J. Eq. 667, 681; Worcester County *v.* Worcester, 116 Mass. 193 (17 Am. R. 159); Somerville *v.* Waltham, 170 Mass. 160 (48 N. E. 1092); Newark *v.* Verona, 59 N. J. L. 94 (34 Atl. 1060); Mayor &c. of Jersey City *v.* Blum, (N. J.) 127 Atl. 214; State *v.* Preston, 103

Or. 631 (206 Pac. 304, 23 A. L. R. 414) ; Inhabitants of Whiting v. Lubec, 121 Me. 121 (115 Atl. 896) ; Downer's Estate, 101 Vt. 167 142 Atl. 78(5) ; Henson v. Monday, 143 Tenn. 418 (224 S. W. 1043) ; J. W. Perry Co. v. Norfolk, 220 U. S. 472 (31 Sup. Ct. 465) ; Louisville v. Commonwealth, 1 Duvall (Ky.), 295 (85 Am. D. 624) ; Durkee v. Comm'rs, 29 Kan. 697; Chadwick v. Maginnes, 94 Pa. 117; Commonwealth v. Philadelphia &c. Co., 287 Pa. 70, 190 (134 Atl. 452) ; Chancellor v. Elizabeth, 65 N. J. L. 479 (47 Atl. 454) ; 2 Cooley on Taxation (2d ed.), § 621; 4 Dillon Mun. Corp. (5th ed.) § 1396, note 2.

In *Dispensary Commissioners* v. *Thornton,* 106 *Ga.* 106, 108 (31 S. E. 733), this court quoted and approved the principle in 2 Cooley on Taxation, § 621, in which it is stated that "All such property is taxable, if the State shall see fit to tax it." This court went further and said that the same principle applies where the tax is one on business or occupation. So we are of the opinion that this act constitutionally imposed this occupation tax upon political subdivisions of this State engaged in this business. This is so without regard to the profit of the business. *Sheffield* v. *Board of Comm'rs.,* 111 *Ga.* 1 (36 S. E. 302). The county can not lawfully conduct this business without paying this tax. If it is without the funds with which to pay this tax, it will have to quit the business.

■ This act is further attacked upon the ground that it violates the commerce clause of the constitution of the United States. It is unquestionably true that Congress has the exclusive power to regulate commerce among the several States, and that any attempt by the State to place a burden upon such commerce in the shape of a tax or otherwise is illegal and unconstitutional. *City of Atlanta* v. *York Manufacturing Co.,* 155 *Ga.* 33 (116 S. E. 195). A license or occupation tax or any charge for a license to sell goods moving in interstate commerce is in effect a tax on the goods themselves, and violates the above provision of the Federal constitution. *Crump* v. *McCord,* 154 *Ga.* 147 (113 S. E. 534). The tax involved in this case is an excise or occupation tax. It is not a tax upon property. It is levied upon "persons and political subdivisions of this State." The measure of the tax is the quantity of motor-fuels used or sold. Texas Co. v. Brown, 258 U. S. 466 (42 Sup. Ct. 375) ; Bowman v. Continental Oil Co., 256 U. S. 642 (41 Sup. Ct. 606) ;

Foster &c. Co. *v.* Graham, 154 Tenn. 412 (285 S. W. 570, 47 A. L. R. 971). Each distributor of such fuel is required to pay an occupation tax of 4 cents per gallon for each and every gallon of such products imported and sold, or imported and withdrawn for use, or manufactured, refined, produced, or compounded within this State. Where a commodity imported into this State has come to rest and become a part of the common mass of property in the State, a nondiscriminatory tax by the State upon it, or upon its sale or use, is valid. Gasoline which is imported by a distributor from another State, but is used in the conduct of his business, loses its interstate character, and may be subjected to an excise tax consistently with the commerce clause of the constitution of the United States, although it remains in the original packages in which it is imported. Hart Refineries *v.* Harmon, 278 U. S. 499 (49 Sup. Ct. 188); Sonneborn *v.* Cureton, 262 U. S. 506 (43 Sup. Ct. 643); Gulf Fisheries Co. *v.* MacInerney, 276 U. S. 124 (48 Sup. Ct. 227); Bowman *v.* Continental Oil Co., supra; Dosher *v.* Query, 21 F. (2d) 521. The tax is not imposed only on oils imported into this State, but upon all oils whether imported into this State or manufactured, refined, produced, or compounded within this State. The tax is not void because discriminatory. In these circumstances a tax may be imposed upon the use as well as upon the sale of the commodity in domestic trade, without coming into conflict with the due process clause of the Federal constitution. So we are of the opinion that this statute is not void because in conflict with this provision of the constitution of the United States.

■ Applying the above principles, the court below erred in not sustaining the demurrer and in granting a perpetual injunction.

*Judgment reversed. All the Justices concur, except*

Beck, P. J., and Atkinson, J., who dissent, being of the opinion that the body of the act referred to in the second headnote contains matter different from what is expressed in the title. The title shows that the act is to be one "providing for an occupation tax upon all distributors of motor-fuels and kerosene engaged in business in this State." We can not agree that the expression, "distributors of motor-fuels and kerosene engaged in business," indicates that counties which buy oil to be used by them and distributed for the use of the county among its officials and employees, who are under the necessity of using motor-fuels and kerosene in their

various occupations, are to be subject to this tax; for counties are not engaged in distributing motor-fuels and kerosene as a business, and are not engaged in business in the sense in which that expression is used in the title of the act in question. We do not think that a member of the legislature in reading this caption would be put upon notice that the tax which is imposed by the act would be laid upon counties; and consequently, when in the body of the act a definition of the word "distributor" is given which is broad enough to cover the political subdivisions of this State, such as counties, the act is made broader than its title, and in that way is made to contain "matter different from what is expressed in the title." We are therefore of the opinion that the judgment of the court below should be affirmed.