S11G1839. CITY OF ATLANTA v. CITY OF COLLEGE PARK et al.

(741 SE2d 147)

MELTON, Justice.

The Cities of Atlanta and College Park entered into an agreement in 1969 (the "Agreement") for purposes of expanding Atlanta Hartsfield-Jackson International Airport (the "Airport"). One of the provisions of the Agreement granted Atlanta the exclusive right to collect and levy occupation taxes from businesses located at its Airport that were within the city limits of College Park. In 2007, after commissioning a study for the purpose of reassessing this relationship, College Park informed Atlanta and Airport businesses that it would no longer honor the 1969 Agreement and that it would now seek to collect occupation taxes from the Airport businesses including Atlanta's proprietary business operations.

Atlanta filed a declaratory action in Fulton County Superior Court seeking a judgment that the 1969 Agreement controlled the collection of occupation taxes from businesses operating at the Airport within College Park. Both Atlanta and College Park moved for partial summary judgment, and, in ruling on the cross-motions, the trial court found that Atlanta and College Park's 1969 Agreement was unenforceable. The trial court further ruled that OCGA § 48-13-13 (5), which prohibits local governments from levying an occupation tax on any "local authority," precluded College Park from levying an occupation tax on Atlanta's proprietary operations because Atlanta met the definition of a "local authority" under the statute.[1]

Both parties appealed, and the Court of Appeals affirmed the trial court's judgment invalidating the 1969 Agreement, but reversed the trial court's finding that the term "local authority" as used in OCGA § 48-13-13 (5) included municipalities. Accordingly, because Atlanta was not a "local authority" that was exempt from the imposition of occupation taxes, the Court of Appeals found that College Park could properly levy an occupation tax on the City of Atlanta for its proprietary operations occurring within College Park. *City of Atlanta v. City of College Park*, 311 Ga. App. 62 (2) (715 SE2d 158) (2011). This Court granted Atlanta's petition for certiorari to determine whether the Court of Appeals erred when it determined that the City of Atlanta was not a "local authority" as that term is used in OCGA § 48-13-13 (5). For the reasons that follow, we affirm.

---

[1] OCGA § 48-13-13 (5) states in relevant part that "[l]ocal governments are not authorized to . . . [l]evy any occupation tax, regulatory fee, or administrative fee on any state or local authority."

With respect to its power to collect a tax, "the governing authority of any . . . municipality . . . may exercise [such] power . . . as authorized by th[e Georgia] Constitution or by general law." Ga. Const. Art. IX, Sec. IV, Par. I (a). And, with respect to its responsibility to pay a tax, a municipality is not necessarily exempted from paying taxes whenever it conducts activities outside of its own territorial limits that would otherwise subject it to paying a tax. See, e.g., OCGA § 48-5-41 (a) (1) (B) (Subject to certain statutorily created exceptions, "[n]o public real property which is owned by a political subdivision of this state and which is situated outside the territorial limits of the political subdivision shall be exempt from ad valorem taxation"). See also, e.g., *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 286 Ga. App. 193, 203 (4) (648 SE2d 701) (2007) (City of Atlanta was not exempt from paying ad valorem taxes to Clayton County where Atlanta had only acted in "its proprietary capacity" with respect to a "profit-generating undertaking" in the County), overruled on other grounds by *Gilmer County Bd. of Tax Assessors v. Spence*, 309 Ga. App. 482 (1) (a) (711 SE2d 51) (2011).

Pursuant to the Georgia Public Revenue Code (OCGA § 48-1-1 et seq.), "each municipal corporation is authorized . . . to provide . . . for the levy, assessment, and collection of occupation tax on those businesses and practitioners of professions and occupations which have one or more locations or offices within the corporate limits." OCGA § 48-13-6 (b); OCGA § 48-13-5 (4) (An "occupation tax" is "a tax levied on persons, partnerships, corporations, or other entities for engaging in an occupation, profession, or business.") (Emphasis supplied). Accordingly, at first glance it would appear that where a municipality such as Atlanta is not acting to carry out a government function, but rather, is acting in a proprietary business capacity outside of its own territorial limits and within the municipal corporate limits of another municipality, it could be responsible for paying occupation taxes to that municipality for conducting such proprietary business operations. Indeed, as the Court of Appeals correctly observed:

> Under Georgia law, when Atlanta acts in its capacity as a lessor at the airport for the purpose of obtaining revenue, it is acting in a proprietary capacity and not carrying out a governmental function. See *Clayton County Bd. of Tax Assessors*[, supra]; *Caroway v. City of Atlanta*, 85 Ga. App. 792, 795-798 (1) (70 SE2d 126) (1952) (The City of Atlanta, which leased out portions of its municipal airport passenger terminal building for the purpose of obtaining revenue, was engaged in a proprietary function and, therefore, was subject to liability as a premises owner.); see also OCGA § 48-5-4

(Except as prohibited by federal law, "all property owned or possessed in this state by a corporation organized under the laws of the United States or owned or possessed by an agency of the United States engaged in this state in proprietary, as distinguished from governmental, activities shall be subject to ad valorem taxation in this state at the same rate and in the same manner as the property of private corporations owning property in this state and engaged in similar businesses.").

*City of Atlanta*, supra, 311 Ga. App. at 68 (2), n. 15. The Public Revenue Code makes clear, however, that "[l]ocal governments [such as the government of College Park] are not authorized to ... [l]evy any occupation tax ... on[, among other entities,] any ... local authority." OCGA § 48-13-13 (5). See also OCGA §§ 48-13-16 (a); 43-12-1. The City of Atlanta argues that it qualifies as a "local authority" under OCGA § 48-13-13 (5) such that it would not have to pay occupation taxes to the City of College Park for conducting proprietary operations there.

"Municipalities" that engage in revenue generating business within the corporate limits of another municipality are not specifically listed as entities that would be exempt from paying occupation taxes. See generally OCGA § 48-13-13. Nor is the term "local authority" defined in OCGA § 48-13-13 to include municipalities. It also is not made clear from the statute that a "local government"/municipality that levies an occupation tax is the same thing as a "local authority" that is exempt from paying an occupation tax. In fact, the term "local authority" is not defined at all in the statute. Accordingly, in order for the City of Atlanta to be exempt from paying occupation taxes for conducting revenue generating business within the city limits of College Park, it would have to be the case that the Legislature specifically intended for municipalities to be exempt "local authorities" under OCGA § 48-13-13 (5) despite failing to list municipalities as exempt entities and failing to define the term "local authority" to specifically include municipalities.

In this regard, it can be said that, if the Legislature intended to exempt municipalities from paying occupation taxes as "local authorities" under OCGA § 48-13-13 (5), it could have expressly stated so in the statute. *Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995) ("[I]f some things (of many) are expressly mentioned [in a statute], the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned") (citations and punctuation omitted). However, this does not end our inquiry. In order to determine whether the Legislature truly intended for the

term "local authority" to include municipalities, we must turn to the basic rules of statutory construction to determine what the Legislature intended for the term "local authority" to mean in OCGA § 48-13-13 (5). Specifically,

> we apply the fundamental rules of statutory construction that require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

(Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003). Where, as here, the term "local authority" is undefined and its plain meaning is not made clear from the language in OCGA § 48-13-13 (5) itself, "the cardinal rule is to glean the intent of the legislature." (Citation and punctuation omitted.) *Retention Alternatives, Ltd. v. Hayward*, 285 Ga. 437, 438 (1) (678 SE2d 877) (2009). To do this, we must presume that the statute was

> enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. It is therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

(Citations and punctuation omitted; emphasis supplied.) Id. at 440 (2).

Accordingly, our task here is to determine the consistent intent of the Legislature as it relates to whether a "municipality" should properly be considered to be a "local authority" for purposes of Georgia's Public Revenue Code. In this connection, the Legislature has provided this Court with guidance in other sections of the Public Revenue Code to indicate that it specifically did *not* intend for the term "local authority" to include a "municipality," and that a "local authority" and a "municipality" are separate and distinct entities for purposes of the Public Revenue Code. See generally OCGA § 48-13-51 (a) (3), (3.4), and (3.7) (multiple references to "[a] county or municipality" being authorized to levy a hotel tax for purposes of "supporting a facility owned or operated by a local government *or* local authority") (emphasis supplied). See also OCGA § 48-13-51 (a) (4.4) ("[M]unicipalities within a county [with] community auditorium or theater

facilities owned and operated by the municipality *or* by a local authority . . . may levy a [hotel] tax under this Code section.") (emphasis supplied); OCGA § 48-8-111 (a) (1) (D) (With respect to a special purpose local option sales tax, "the governing authorities of the county and of each qualified municipality" may apply the tax proceeds toward "[a] capital outlay project or projects, to be owned or operated or both either by the county, one or more qualified municipalities within the special district, one or more *local authorities* within the special district, *or* any combination thereof.") (emphasis supplied). This interpretation is underscored by the Legislature's choice to specifically define a "local authority" as a separate entity from a "local government" in areas of the Georgia Code dealing specifically with local governments. See OCGA § 36-80-17 (a) ("[T]he term 'local authority' means an instrumentality of one or more local governments created to fulfill a specialized public purpose or any other legally created organization that has authority to issue debt for a public purpose *independent of a county or municipality*.") (emphasis supplied). Atlanta's arguments to the contrary do not show that the Legislature intended for the terms "local authority" and "municipality" to be one and the same for purposes of the section of the Public Revenue Code at issue here. See generally OCGA § 48-13-13.

As a result, we conclude that the Court of Appeals was correct in its determination that the City of Atlanta was not a "local authority" as that term is used in OCGA § 48-13-13 (5).

*Judgment affirmed. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting.

In this case, we granted certiorari on the following question: "Did the Court of Appeals err when it determined that the City of Atlanta was not a 'local authority' as that term is used in OCGA § 48-13-13 (5)?" I respectfully dissent from the majority's conclusion that the Court of Appeals did not err with respect to this issue.

One compelling reason for rejecting the Court of Appeals' conclusion that the term "local authority" as used in OCGA § 48-13-13 (5) does not include a municipality or county is that such a construction of this code section leads to an absurd and unintended result.[2]

---

[2] "The cardinal rule of statutory construction requires this Court to look diligently for the intention of the General Assembly and the golden rule of statutory construction requires us to follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to insure that the legislature meant something else." *Judicial Council of Ga. v. Brown & Gallo, LLC*, 288 Ga. 294, 296-297 (702 SE2d 894) (2010) (citations and punctuation omitted).

Relying upon the definition found in OCGA § 36-80-17 (a) (relating to contracts for utility services provided by a local utility authority) and analogizing to the definition of "state authority" found in OCGA § 48-13-50.2 (5) (providing for an excise tax on certain hotel rooms), the Court of Appeals concluded that "a 'local authority' means an agency created by one or more local governments to carry out certain discrete governmental functions for a local purpose." *City of Atlanta v. City of College Park*, 311 Ga. App. 62, 71 (715 SE2d 158) (2011). The majority in this Court also relies upon OCGA § 36-80-17 (a) to conclude the Court of Appeals was correct in determining that Atlanta is not a "local authority" for purposes of OCGA § 48-13-13 (5). Such a construction, however, means that OCGA § 48-13-13 (5) prohibits a local government from taxing a "local authority" established as an agency of a local government to carry out discrete governmental functions on its behalf but permits one local government to tax another that engages directly in those same activities within the taxing government's jurisdiction rather than creating a "local authority" to do so. This construction effectively permits a municipality to avoid taxation on revenue derived from proprietary activities by setting up an "authority" to engage in such activities and subjects the municipality to taxation in the event it chooses to engage in these activities directly.

Moreover, the statute refers to any "state or local authority." Consequently, pursuant to the rationale applied by the majority, the State of Georgia would not come within the scope of the term "state authority." Accordingly, the majority opinion could be interpreted as permitting any local government to levy an occupation tax on the proprietary activities of the State, such as license fees and rental income derived from food vendors at state office buildings, revenues from campgrounds at state parks, greens fees collected at state-owned golf courses and any number of other proprietary activities.

Equally compelling is the general rule that "[p]ublic property is always presumed to be exempt from operation of general tax laws, because it is reasonable to suppose that it was not within the intent of the legislature to make public property subject to them." *Wright v. Fulton County*, 169 Ga. 354, 363 (150 SE 262) (1929). In *Wright*, this Court concluded that a statute imposing an occupation tax upon all distributors of motor fuels was broad enough to permit taxation of political subdivisions of the state because the statute expressly authorized it by including political subdivisions of the state within the definition of distributors upon whom the tax could be levied. Id. at 357. By contrast, in *Dispensary Commrs. of Terrell County v. Thornton*, 106 Ga. 106, 108 (31 SE 733) (1898), cited with approval in the *Wright* opinion, this Court held that a general state tax law

authorizing an occupation tax upon "all dealers in spirituous or malt liquors" did not apply to the operation of a liquor dispensary by a county's dispensary commissioners because the statute did not expressly impose a tax burden upon the government's activities in this arena.

In this case, because OCGA § 48-13-13 (5) contains no language authorizing the imposition of an occupation tax upon a municipality, it should not be construed as permitting such a tax. The majority's logic is backwards when it concludes that if the Legislature had intended to exempt municipalities from paying occupation taxes it could have expressly stated so. This Court has consistently held that, absent express legislative intent, governmental property and activity is not subject to taxation. See *Newton v. City of Atlanta*, 189 Ga. 441 (6 SE2d 61) (1939) (addressing an occupation tax levied on food produce vendors at the State Farmers Market) and cases cited therein. If the Legislature had intended to subject municipalities to occupation taxes, it could have and should have expressly stated so. Nothing in the statute authorizes one municipality to impose an occupation tax upon another. In fact, the statute expressly prohibits such a tax on any "state or local authority." Even if that term is deemed not to expressly prohibit such a tax upon a municipality, it is without dispute that the statute does not expressly authorize such a tax.

Finally, because the term "local authority" is not defined in OCGA § 48-13-13, the majority, citing to other sections of the Public Revenue Code in which the terms "municipality" or "local government" are referenced separately from "local authority," concludes that the Legislature did not intend "local authority" to include a municipality. These Code sections address how excise taxes collected on hotel rooms and other accommodations may be spent[3] and the purpose for which local option sales taxes may be spent.[4] They do not involve the authority to impose a tax upon a municipality. Numerous examples may be found in our statutes, however, in which the term "local authority" has been used to refer to municipalities or counties and not to a statutory authority.[5]

---

[3] See OCGA § 48-13-51 (a) (3), (3.4), (3.7) and (4.4).

[4] See OCGA § 48-8-111 (a) (1) (D).

[5] See, e.g., OCGA §§ 40-6-372 (authorizing "local authorities," such as municipalities, to adopt Uniform Rules of the Road); 40-5-53 (b) (referring to counties as a "local authority" for purposes of enforcing traffic offenses under state law); 40-6-374 (equating "local authorities" with municipalities and counties); 16-6-8 (e) (referencing local laws, rules and regulations of state and local authorities, which, by definition, may only be enacted by local governments such as municipalities and counties and not statutory authorities); 49-5-8 (a) (4) (A) (authorizing the establishment of group care facilities as an alternative for "local authorities" to place a child in a common jail, obviously referring to local governments and not to statutory authorities);

The potential impact of the majority's interpretation of the term "local authority" as that term is used in OCGA § 48-13-13 (5) is likely to have widespread implications for all local governments in Georgia. I do not believe this was the Legislature's intent when it used the term "state or local authority" in this statute.

Accordingly, I would affirm in part and reverse in part.

DECIDED MARCH 28, 2013.

*Hunton & Williams, Matthew J. Calvert, Cherie A. Phears*, for appellant.

*Fincher, Denmark & Williams, Steven M. Fincher, Winston A. Denmark, Michael J. Williams, Emilia C. Walker*, for appellees.

---

40-6-224 (requiring state and local authorities to honor out-of-state handicapped license and parking permits, obviously referring to local governments and not to statutory authorities).

