**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 12, 2015**

# In the Court of Appeals of Georgia

A15A1095. CROSBY et al. v. JOHNSON et al.          DO-055

DOYLE, Chief Judge.

Roy Crosby, the Coroner of Bacon County, appeals the denial of his motion to dismiss a lawsuit filed against him in his individual and official capacities by Johnny Johnson, personally and as administrator of the estate of Dewey Johnson (deceased); Frances Johnson; Candace Medders; Jennifer Johnson; Johnny Johnson, Jr.; Roy Johnson; Theresa Johnson; and Cindy Thompson, as parent and guardian of Dewey Johnson, Jr., and Kamie Deanna Johnson. Crosby contends that the trial court erred by ruling that (1) Crosby is a county official instead of a state official, (2) Crosby is not entitled to sovereign immunity, and (3) Crosby is not entitled to official immunity because his allegedly tortuous conduct was ministerial. For the reasons that follow, we reverse.

"On appeal, we review a trial court's decision to grant or deny a motion to dismiss de novo. And in reviewing the grant of a motion to dismiss, an appellate court must construe the pleadings in the light most favorable to the appellant with all doubts resolved in the appellant's favor."[1]

The plaintiffs' complaint as amended alleges that at approximately 5:30 a.m. on September 8, 2007, Dewey Johnson died. His body was discovered at approximately 6:12 p.m. on the same day, and the Georgia Bureau of Investigation responded to the scene to investigate the circumstances of death. Shortly after midnight, Crosby took custody of the body in his capacity as Coroner, but instead of taking the body to a refrigerated hospital morgue, Crosby transported it to a shed behind a private funeral home he operated, Crosby Funeral Homes, Inc.

The complaint further alleges that the plaintiffs contracted with Crosby to provide funeral and burial services, but by the time the family attempted to hold an open casket viewing on September 12, four days later, the body had decomposed to the point of being in an inappropriate condition for viewing. Over the family's

---

[1] (Citation, footnote, and punctuation omitted.) *Thomas v. Gregory*, 332 Ga. App. 286, 287 (772 SE2d 382) (2015).

objection, Crosby did not allow them to view the body, and the funeral and burial were conducted with a closed casket.

Based on these events, the plaintiffs sued Bacon County, Crosby Funeral Homes, and Crosby, naming him in his individual capacity and his official capacity as Coroner, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent conduct, negligence and negligence per se, willful interference with remains, negligent interference with remains, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent performance of a ministerial duty.

Pursuant to OCGA § 9-11-12 (b) (6), Crosby and Bacon County moved to dismiss the claims against them to the extent they derived from Crosby's acts as Coroner for the County. The motion noted that Crosby had also been sued with respect to his non-governmental position at the funeral home, and it did not seek dismissal as to claims against Crosby in that capacity. Following a hearing, the trial court denied the motion as to Crosby, noting that the parties had agreed that Bacon County was not properly subject to suit, apparently on sovereign immunity grounds. Crosby now appeals.

1. Crosby contends that the trial court erred by characterizing him as a county official, instead of a state officer who would enjoy protection from liability under the Georgia Tort Claim Act ("GTCA"). We disagree.

The GTCA provides that "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."[2] The GTCA defines "state officer or employee," in relevant part, as "an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity."[3] There is a dearth of case law on whether coroners fall within this category, so we turn to the statutory scheme governing coroners.

OCGA § 45-16-1 provides, in relevant part:

(a) Coroners are elected, commissioned, and removed as are clerks of the superior courts; and coroners shall hold their offices for four years.

(b) (1) No person shall be eligible to offer for election to or to hold the office of coroner unless he or she:

. . .

---

[2] See OCGA § 50-21-25 (a).

[3] OCGA § 50-21-22 (7).

(B) Is a resident of the county in which he or she seeks the office of coroner for at least two years prior to his or her qualifying for the election to the office and remains a resident of such county during his or her term of office[.]

. . .

(c) Notwithstanding any other provision of law, any person holding office as the mayor of a municipality with a population of 5,000 or less according to the United States decennial census of 1980 or any future such census is specifically authorized to serve simultaneously as coroner; and any person holding the office of coroner is specifically authorized to serve simultaneously as mayor of a municipality with a population of 5,000 or less according to the United States decennial census of 1980 or any future such census.

Thus, on the face of this Code section, coroners are subject to county elections, not state-wide, and appear to be closely tied to their counties as opposed to the State.

This view is supported by other portions of the Code, which provide that coroners may in some circumstances act in the place of the county sheriff,[4] a post which this Court has held to be a county official and not a state officer.[5] Also, the

_____

[4] See OCGA §§ 45-16-5; 45-16-8.

[5] See *Nichols v. Prather*, 286 Ga. App. 889, 893 (1) (650 SE2d 380) (2007).

Code requires the "coroner of each county" to appoint a deputy coroner "for each county."[6] The county governing authority (not the State) is authorized to approve the appointment of additional deputy coroners for the county.[7] The Code requires a county coroner's salary to be paid "from the funds of the coroner's county,"[8] and authorizes county governing authorities to provide for contingent expense allowances "from county funds."[9] The General Assembly may, through the passage of a local law, abolish the office of coroner and create the office of medical examiner for a particular county, but in such a case, the new medical examiner

> shall be appointed by the governing authority of that county, shall serve at the pleasure of that governing authority, shall be compensated in an amount determined by that governing authority, and all expenses of the office of such medical examiner shall, subject to county budgetary limitations, be paid from the general funds of that county.[10]

---

[6] (Emphasis supplied.) See OCGA § 45-16-7 (a).

[7] See OCGA § 45-16-7 (c).

[8] OCGA § 45-16-11 (a) (1).

[9] OCGA § 45-16-11.2.

[10] OCGA § 45-16-80 (e).

Based on this statutory scheme, we conclude that for purposes of immunity under the GTCA, coroners are county officials, not state officers.[11] Accordingly, this enumeration presents no basis for reversal.

2. Crosby next contends that the trial court erred by ruling that he is not entitled to assert a sovereign immunity defense to the extent he was sued in his official capacity. We agree.

The complaint names Crosby as a defendant in his official capacity and in his individual capacity, and it alleges that Crosby committed negligent acts while he acted as Coroner (choosing to transport the body to a place other than a refrigerated hospital morgue) and while he acted in a non-governmental function on behalf of the funeral home (allegedly allowing the body to unduly decompose prior to burial). The claims related to the non-governmental funeral home operations were not subject to the motion to dismiss and are still pending. Thus, the claims against Crosby for his conduct as Coroner are the sole focus of this appeal.

With respect to the motion to dismiss filed by Crosby and the County, the trial court's order states that "[t]he parties have indicated that they are in agreement that

---

[11] Cf. *Nichols*, 286 Ga. App. at 893 (1) (holding that sheriffs are county officials in part because they are subject to county elections and paid by county treasuries subject to county commission funding).

Bacon County is not a proper party to this lawsuit," apparently on the ground that the County is entitled to sovereign immunity. Nevertheless, the court's order goes on to hold that "Defendant Crosby's Motion to Dismiss, in his official capacity, is hereby DENIED." This result conflates the concepts of a suit against Crosby in his official and individual capacities. When a claim is filed against a county official in his official capacity, the claim is, "in essence, . . . against [the] County[,] and [the official] may raise any defense available to the county, including sovereign immunity."[12] Accordingly, with respect to the claims against Crosby in his *official* capacity, they are essentially against the County, which is entitled to sovereign immunity.[13] As noted by the trial court, the plaintiffs do not argue that the County has waived its immunity, nor do they, on appeal, identify any statutory waiver of immunity on the part of the County. It is well settled that "[s]overeign immunity is not an affirmative defense that must be established by the party seeking its protection. Instead, immunity from suit is a privilege and the waiver must be established by the party seeking to benefit from

[12] *Gilbert v. Richardson*, 264 Ga. 744, 746, n. 4 (452 SE2d 476) (1994)

[13] See, e.g., id. at 747-748 (2) & (3) (holding that the State's sovereign immunity extends to counties, absent a statutory waiver of immunity on the part of counties). See also *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001) ("Suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity.") (punctuation omitted).

8

the waiver."[14] Accordingly, the trial court erred to the extent that it denied the motion to dismiss the claims against Crosby in his official capacity, i.e., against the County.

3. Crosby also challenges the trial court's ruling that he, in his individual capacity, is not entitled to official immunity. We agree.

When a county official is sued in his individual capacity, the doctrine of official immunity (as opposed to sovereign immunity) is implicated.[15]

> The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority. Furthermore, a ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.[16]

---

[14] (Punctuation omitted.) *Tattnall County v. Armstrong*, 333 Ga. App. 46, 51, n. 9 (775 SE2d 573) (2015).

[15] See *Austin v. Clark*, 294 Ga. 773, 774 (755 SE2d 796) (2014).

[16] (Citations and punctuation omitted.) Id. at 774.

Here, the plaintiffs argue, and the trial court held, that OCGA § 45-16-31 creates a ministerial duty on the part of coroners with respect to transport of deceased bodies. That Code section provides as follows:

> When the deceased body lies in a place inconvenient for holding a medical examiner's inquiry, the medical examiner or coroner shall be allowed to remove the body to the autopsy room of the nearest public hospital or morgue. If neither the coroner nor the medical examiner is immediately available, the peace officer may assume the authority to have the body moved to such facility. When such facility is not reasonably available, the body may be removed to such other suitable place as may be designated by the coroner or the medical examiner or by the peace officer in charge in the absence of the coroner or medical examiner. If the peace officer in charge is present, no such body shall be removed until photographs of the body and surrounding premises have been made and a thorough investigation of the premises has been made by the proper investigating authorities.[17]

Put succinctly, the Code provides that if the body location is "inconvenient" for holding an inquiry, the coroner is "allowed" to remove the body to a nearby hospital

---

[17] OCGA § 45-16-31.

10

or morgue.[18] And if a hospital or morgue is "not reasonably available, the body may be removed to such other suitable place as may be designated by the coroner."[19]

Based on this language, the trial court held that if a body is in an inconvenient location, the coroner "has an absolute, ministerial duty to 'remove the body to the autopsy room of the nearest public hospital or morgue," unless it is not "reasonably available." But this conclusion interprets "shall be allowed" to mean "must." Such an interpretation is contrary to the plain meaning of the words "shall *be allowed*," which signify permission rather than creating a mandatory direction.[20] Further, the Code section first requires a determination by the coroner that the location is inconvenient, which requires an exercise of discretion. The Code also requires a determination as to whether the nearest public hospital or morgue is "reasonably available," which likewise requires an exercise of discretion. In sum, the Code section provides no

---

[18] Id.

[19] Id.

[20] See, e.g., *Longino v. Hanley*, 184 Ga. 328, 330 (191 SE2d 101) (1937) ("The words 'are authorized to refund,' according to ordinary signification, denote permission only."). See generally *City of Atlanta v. City of College Park*, 292 Ga. 741, 744 (741 SE2d 147) (2013) ("[T]he fundamental rules of statutory construction . . . require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage.") (punctuation omitted).

11

absolutes, instead using standards such as "inconvenient," "reasonably available," and "suitable . . . as may be designated by the coroner."[21] All of this "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed,"[22] and as such is discretionary not ministerial conduct. Accordingly, the trial court erred by ruling that Crosby is not entitled to official immunity with respect to the plaintiffs' claims predicated on alleged violations of OCGA § 45-16-31.

We note that in *Austin v. Clark*,[23] the Supreme Court concluded that a motion to dismiss for failure to state a claim, as was filed here, was an unsuccessful way to assert an official immunity claim based on the fact-specific analysis required in that case to address the ministerial/discretionary dichotomy. In *Austin*, the Court explained that "discovery in this case has been extremely limited[,] and the record, to date, contains no job descriptions for the individuals being sued. At this time, it cannot be said that the allegations of the complaint disclose with certainty that [the plaintiff] would not be entitled to relief under any state of provable facts asserted in

---

[21] OCGA § 45-16-31.

[22] *Austin*, 294 Ga. at 774.

[23] Id.

12

support."[24] Here, however, the plaintiffs' complaint,[25] the motion to dismiss, and the appellate briefing are explicitly premised on the scope of Crosby's official immunity for alleged violation of duties contained in OCGA § 45-16-31, and the trial court's ruling, so limited, only engaged in an analysis of the statute. Accordingly, with respect to Crosby's official immunity for alleged violation of a coroner's alleged duties *as enumerated in the statute*, the record is fully developed, and the issue is properly resolved even in the current procedural posture.

4. A remaining portion of Crosby's appellate brief discusses the effect of OCGA § 15-13-1, which provides as follows: "All sheriffs, deputy sheriffs, coroners, jailers, constables, and other officers of court shall be liable to all actions and disabilities which they incur in respect of any matter or thing relating to or concerning their respective offices." The plaintiffs argue that OCGA § 15-13-1 creates a private

---

[24] Id. at 775.

[25] The complaint specifically alleges that Crosby failed to carry out his duty under "[t]he Georgia Death Investigation[] Act [OCGA § 45-16-20 et seq.] . . . as an elected County Coroner, [to] take possession [of] the body, until the medical examiner in Savannah could perform the autopsy, and take it to the nearby refrigerated public hospital morgue. Defendant Crosby chose not to do so and, in violation of the statute, instead chose to place the body in a poorly refrigerated shed behind his temporary private mortuary services." The plaintiffs do not argue that Crosby violated an internal policy outside the scope of statutory analysis.

13

right of action and functions as a waiver of "any immunity that may have applied," but they cite no case law so stating, and we have found none. "The cardinal rule of statutory construction is to seek the intent of the Legislature, and language in one part of a statute must be construed in the light of the legislative intent as found in the statute as a whole."[26] Placed at the beginning of the statutory scheme governing officers of court generally, OCGA § 15-13-1 establishes a background premise that officers of court "shall be liable to all actions and disabilities *which they incur*"[27] involving their offices. It does not purport to create or otherwise specify those actions; instead, the Code sections that follow specify how sheriffs and other officers of court can be subjected to certain actions.

For example, OCGA § 15-13-2 creates an action for damages against a sheriff for making a false return, neglecting to arrest a defendant, neglecting to levy on property, neglecting to pay money collected by legal process, or neglecting to make a proper return of process. Next, under OCGA § 15-13-3, named officers of court (including sheriffs and coroners) are made subject to demands to pay the proper

---

[26] (Punctuation omitted.) *Colon v. Fulton County*, 294 Ga. 93, 98 (2) (751 SE2d 307) (2013).

[27] (Emphasis supplied.)

14

parties money the officer may hold by virtue of his office. Under OCGA § 15-13-4, officers of court are subject to rules nisi, which shall be answered pursuant to OCGA § 15-13-5. In light of this overall scheme, absent clear statutory language showing that OCGA § 15-13-1 itself functions as an independent right of action or as a waiver of official immunity, we decline to so hold.[28] Instead, we read OCGA § 15-13-1 as consistent with current case law holding that sheriffs and other similar officials can be sued in their individual capacities and found personally liable for negligently performed ministerial acts.[29]

*Judgment reversed. Phipps, P. J., and Boggs, J., concur.*

---

[28] Compare *Barrett v. Marathon Inv. Corp.*, 268 Ga. App. 196, 199 (4) (601 SE2d 516) (2004) (action premised on failure to disburse money under OCGA § 15-13-2 (4) was not barred by sovereign immunity).

[29] See, e.g., *Nichols*, 286 Ga. App. at 896-898 (4). Cf. *Chadwick v. Stewart*, 94 Ga. App. 329 (2) (94 SE2d 502) (1956) (citing former Code § 24-201 and holding that "[a] deputy sheriff transporting a prisoner in his custody from one place to another owes the prisoner the duty to exercise ordinary care while driving the vehicle in which the prisoner is required to ride").