**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 1, 2016**

# In the Court of Appeals of Georgia

A16A0582. SCHUMACHER et al. v. CITY OF ROSWELL.

BARNES, Presiding Judge.

Eric Shumacher and Mike Nyden, who are residents and residential property owners in the City of Roswell (the "City"), brought this action for declaratory and injunctive relief in the Superior Court of Fulton County to challenge the City's approval of a new zoning ordinance and map that rezoned their respective properties. After the superior court granted the City's motion for judgment on the pleadings and denied the plaintiffs' request for an interlocutory injunction as moot, the plaintiffs filed this direct appeal. Because the plaintiffs were required to appeal by discretionary application, we dismiss this appeal for lack of jurisdiction.

As reflected in the pleadings and attached exhibits, the plaintiffs are citizens and taxpayers of the City and own residential real property located there. In February 2014, after conducting two public meetings, the Council of the City of Roswell (the "City Council") approved a new zoning ordinance called the Unified Development Code ("UDC") and a new zoning map. The UDC substantially replaced the City's existing zoning ordinance and rezoned the plaintiffs' properties.

Following the adoption of the UDC and new zoning map, the plaintiffs commenced the present action against the City,[1] challenging the manner in which the City Council had approved the UDC and map. In their complaint, as later amended, the plaintiffs alleged that the adoption of the UDC violated Georgia's Zoning Procedures Law, OCGA § 36-66-1 et seq.; violated the plaintiffs' due process rights under the state and federal constitutions; violated the Roswell City Charter; and violated the conflict-of-interest laws applicable to zoning actions codified in OCGA § 36-67A-1 et seq. The plaintiffs alleged that they were harmed by the rezoning of their residential properties under the UDC, and they sought a declaratory judgment

---

[1] A third plaintiff named in the complaint is not a party to this appeal. The original complaint named the Mayor of Roswell and City Council members as additional defendants, but they were dropped as defendants in the plaintiffs' amended complaint.

2

that the UDC was void and unenforceable as illegally enacted, an injunction prohibiting its enforcement, and attorney fees and costs.

The City answered, denying the plaintiffs' allegations, and attached and incorporated by reference to their answer certified copies of the UDC, the new zoning map, and the minutes of the two City Council meetings where the UDC and map were discussed and approved. The City also filed a motion for judgment on the pleadings, seeking dismissal of all of the plaintiffs' claims. The plaintiffs opposed the City's motion for judgment on the pleadings and filed a motion for interlocutory injunction to prohibit enforcement of the UDC during the pendency of the litigation. After conducting a hearing in which the parties presented oral argument, the trial court granted the City's motion for judgment on the pleadings on all of the plaintiffs' claims and denied the plaintiffs' motion for an interlocutory injunction as moot.

The plaintiffs filed a direct appeal from the trial court's order, challenging only the dismissal of their state and federal constitutional due process claims.[2] The City moved to dismiss the plaintiffs' direct appeal for lack of jurisdiction, arguing that the

---

[2] The plaintiffs originally filed their direct appeal in the Supreme Court of Georgia, which transferred the case to this Court.

plaintiffs were required to comply with the application procedures for discretionary appeal.

Two principle statutes determine the method for pursuing appeals in our Court: OCGA § 5-6-34 describes the trial court judgments and orders that parties may appeal directly, while OCGA § 5-6-35 describes the cases in which parties must file an application for discretionary appeal. *Rebich v. Miles*, 264 Ga. 467, 468 (448 SE2d 192) (1994). If an appellant files a direct appeal under OCGA § 5-6-34 in a case in which a discretionary application was required under OCGA § 5-6-35, this Court lacks jurisdiction to hear the merits of the appeal and must dismiss it. Id.

OCGA § 5-6-35 (a) (1) provides that "[a]ppeals from decisions of the superior courts reviewing decisions of . . . state and local administrative agencies" must be brought by application for discretionary appeal. See *Hamryka v. City of Dawsonville*, 291 Ga. 124, 125 (1) (728 SE2d 197) (2012). "The General Assembly passed OCGA § 5-6-35 to assist in reducing the massive caseload of the appellate courts," and the legislative intent behind OCGA § 5-6-35 (a) (1) was to give appellate courts the discretion not to entertain an appeal where two tribunals (the superior court and an administrative agency) had already heard the matter. *Rebich*, 264 Ga. at 468.

Construing OCGA § 5-6-35 (a) (1), our Supreme Court held in *Trend Dev. Corp. v. Douglas County*, 259 Ga. 425 (1) (383 SE2d 123) (1989) that appellate review of superior court orders reviewing county commissions' zoning decisions require a discretionary application. As the Supreme Court later explained,

> A case filed in either appellate court that involves zoning must come by application when "it is an appeal from the decision of a court reviewing a decision of an administrative agency" within the meaning of OCGA § 5-6-35 (a) (1). In essence, this Court determined in *Trend* and its progeny that a zoning decision made by a local government was the action of a local administrative agency within the meaning of OCGA § 5-6-35 (a) (1), and an appeal from a superior court decision reviewing the local administrative agency's decision must come by way of application pursuant to § 5-6-35 (a) (1).

(Citations omitted.) *Fulton County v. Congregation of Anshei Chesed*, 275 Ga. 856, 857 (1) (572 SE2d 530) (2002).

Additionally, since *Trend*, the Georgia Supreme Court has clarified that OCGA § 5-6-35 (a) (1) applies not only to cases where a party appeals directly to the superior court from the local government's zoning decision, but also in cases where a party collaterally attacks the local government's zoning decision by filing an action in superior court for mandamus, declaratory judgment, or injunctive relief. See

5

*Hamryka*, 291 Ga. at 125 (2); *Ladzinske v. Allen*, 280 Ga. 264, 265 (626 SE2d 83) (2006); *Ferguson v. Composite State Bd. of Med. Examiners*, 275 Ga. 255, 258 (2) (564 SE2d 715) (2002). As the Supreme Court noted in *Hamryka*, 291 Ga. at 125 (2), OCGA § 5-6-35 (a) (1) "is not limited to 'appeals' *to* the superior court but instead applies to appeals *from* the superior court's 'review[]' of an administrative agency decision, however that judicial review is sought." (Emphasis in original.) Accordingly, if a plaintiff's action filed in superior court "attacks or defends the validity of [a local government's zoning decision] and seeks to prevent or promote the enforcement thereof, the [superior] court must necessarily 'review' the [zoning] decision before ruling on the [plaintiff's] request" for relief, and the appeal of the superior court's ruling must proceed by discretionary application. (Punctuation and footnotes omitted.) *Ferguson*, 275 Ga. at 258-259 (2).

Here, the plaintiffs' amended complaint seeking declaratory and injunctive relief challenged the City Council's zoning decision to approve the UDC and new zoning map on constitutional due process and other grounds, and the plaintiffs sought to have the UDC and map declared null and void and to prevent their enforcement. None of the plaintiffs' requests for relief were independent of the City Council's decision to approve the UDC and map, and none of the requests for relief could be

6

granted or denied by the superior court without affirming or reversing the City Council's decision. Under these circumstances, we conclude that the plaintiffs' appeal was from the superior court's review of a local government zoning decision, requiring appeal by discretionary application under OCGA § 5-6-35 (a) (1). See *Trend Dev. Corp.*, 259 Ga. 425-426 (1).

The plaintiffs, however, argue that they were not required to file a discretionary application because the City Council's decision to approve the UDC and map was a "legislative" rather than an "administrative" zoning decision. Specifically, the plaintiffs draw a distinction between a "legislative" decision by the City Council to approve a new zoning ordinance and map as occurred in this case, and a more specific "administrative" decision by the City Council regarding the zoning of a specific parcel of land. According to the plaintiffs, a discretionary application is only required in the latter circumstance.

The plaintiffs' effort to distinguish between a "legislative" and "administrative" zoning decision by a local government is misguided in the context of evaluating our appellate jurisdiction in zoning cases. *Trend* construed a county commission's vote on a rezoning proposal as a local administrative agency decision for purposes of determining the method of appeal, see *Trend Dev. Corp.*, 259 Ga. at

7

425-426 (1), (2), despite the fact that in other contexts, the Court had held that "commissioners in voting on either a zoning or rezoning proposal are functioning in a legislative capacity." *Olley Valley Estates v. Fussell*, 232 Ga. 779, 781 (1) (208 SE2d 801) (1974). The Supreme Court's decision in *Trend* therefore reflects that a zoning decision that could be characterized as "legislative" in other contexts still can fall within the ambit of OCGA § 5-6-35 (a) (1).

Furthermore, it is undisputed that the City Council's approval of the UDC and map rezoned the properties of the plaintiffs and other property owners. Clearly, *Trend* and its progeny establish that rezoning decisions as to particular parcels of property are local administrative agency decisions under OCGA § 5-6-35 (a) (1), see *Trend Dev. Corp.*, 259 Ga. at 425-426 (1), (2); *Nelson v. Fulton County*, 262 Ga. App. 382, 382 (585 SE2d 710) (2003); *Pruitt v. Fulton County*, 210 Ga. App. 873, 873 (437 SE2d 861) (1993), and we can discern no logical or practical reason for reaching a different conclusion in this case simply because the zoning decision rezoned multiple parcels of land rather than a single parcel.

Additionally, our Supreme Court has held that a discretionary application is required to appeal a superior court ruling on a property owner's constitutional claim challenging the validity of a city zoning ordinance on its face. *OS Advertising Co. of*

8

*Ga. v. Rubin*, 267 Ga. 723, 725 (2) (482 SE2d 295) (1997). In *Rubin*, the Supreme Court rejected the appellant's argument that when a superior court considers a landowner's facial constitutional challenge to a city zoning ordinance, the superior court "is not acting as a reviewing court ruling on an appeal from an administrative agency" for purposes of the discretionary appeal statute. Id. at 725 (2). The Supreme Court refused to deviate from the "bright-line rule" established in *Trend* that "appeals in zoning cases require[] an application," id. at 724 (1), even though a facial challenge to a city zoning ordinance does not involve the superior court reviewing a zoning decision specific to a single parcel of land. Id. at 725 (2).

*Rubin* undercuts the plaintiffs' argument that we should draw a distinction between a "legislative" and "administrative" zoning decision and require a discretionary application only in appeals from the superior court's review of a local government zoning decision that addresses a particular land parcel. Rather, *Rubin* reflects that a discretionary appeal is required more broadly in cases like the present one, where the superior court reviews property owners' facial challenge to the validity

of a city zoning ordinance, which is in essence a challenge to a city council's decision to adopt the ordinance in the first instance. See *Rubin*, 267 Ga. at 725 (2).[3]

Lastly, we note that there is an exception to the discretionary application requirement under OCGA § 5-6-35 (a) (1) in cases where the plaintiff who challenged the zoning decision in superior court was not a party, and could not have been a party, in the local government's zoning proceeding. See *Ladzinske*, 280 Ga. at 265 ("[The] rationale for requiring a discretionary application does not apply where the person who seeks to appeal was not a party to the administrative proceedings, unless he had standing to participate therein, but purposely opted out at the administrative level."). However,

> the word "party" is used in this context not in the technical sense of whether the challenger in superior court was a formally named party in the administrative process, but rather in the generic sense of whether the challenger participated in the administrative proceedings at issue (or could have participated but purposely did not).

---

[3] The plaintiffs also rely on *Sprayberry v. Dougherty County*, 273 Ga. 503, 504 (1) (543 SE2d 29) (2001), and *SMD, LLP v. City of Roswell*, 252 Ga. App. 438, 439 (1) (555 SE2d 813) (2001), to support their contention that they were not required to file a discretionary application, but their reliance on those cases is misplaced. Our Supreme Court's subsequent decision in *Ferguson*, 275 Ga. at 258 (2) abrogated *Sprayberry* and *SMD* to the extent that those cases may have otherwise applied to the facts of the present case.

*Hamryka*, 291 Ga. at 126 (3).

Of course, there were no specific "parties" in the technical sense to the two public meetings conducted by the City Council in which the UDC and map were discussed, but the certified minutes of those meetings reflect that members of the public were allowed to participate and make comments before the final vote was taken. Indeed, Plaintiff Schumacher attended and participated in the first public meeting and voiced his concerns over the UDC, and a letter from plaintiffs' counsel was read at the second public meeting that voiced objection to the manner and procedure in which the UDC was being adopted. Thus, this is not a case where only certain individuals were permitted to participate in the administrative zoning proceedings; rather, the proceedings were open to all members of the public for their participation, including the plaintiffs and their counsel. Given these circumstances, we conclude that the exception to the discretionary appeal requirement for "non-parties" to administrative zoning proceedings does not apply.

For these combined reasons, we conclude that the plaintiffs' appeal of the superior court's grant of the City's motion for judgment on the pleadings is "an appeal from the decision of a court reviewing a decision of an administrative agency within the meaning of OCGA § 5-6-35 (a) (1)" that had to proceed by discretionary

11

application. *Congregation of Anshei Chesed*, 275 Ga. at 857 (1), quoting *Trend Dev. Corp.*, 259 Ga. at 425 (1). Because the plaintiffs failed to comply with the discretionary appeal procedure, we hereby grant the City's motion to dismiss the appeal for lack of jurisdiction.

*Appeal dismissed. Boggs J., concurs. Rickman, J. concurs fully and specially.*

A16A0582.  SCHUMACHER et al. v. CITY OF ROSWELL.

RICKMAN, Judge, concurring fully and specially.

I concur fully with the majority that this appeal is subject to dismissal based upon *O. S. Advertising Co. of Ga., Inc. v. Rubin*, 267 Ga. 723 (482 SE2d 295) (1997) and *Hamryka v. City of Dawsonville*, 291 Ga. 124, 125 (1) (728 SE2d 197) (2012). I write separately to express a genuine and respectful concern that the plain language of OCGA § 5-6-35 (a) (1) combined with the oft repeated directive of our Supreme Court that we are to give statutory text its "ordinary, logical, and common meaning", leads me to question whether the acknowledged "fallacies in the rationale in [*Trend Development Corp. v. Douglas County*, 259 Ga. 425 (383 SE2d 123) (1989)]" remain

viable. *O. S. Advertising Co.*, 267 Ga. at 725 (2); See *Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.") (citations and punctuation omitted.); see also *Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (743 SE2d 55) (2012); *City of Atlanta v. City of College Park*, 292 Ga. 741, 744 (741 SE2d 147) (2013); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012); *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013).

> OCGA § 5-6-35 (a) (1) does *not* provide that appeals in zoning cases can be brought only by means of the discretionary appeal process. By its terms, that statute provides, in relevant part, only that '[a]ppeals from decisions of the superior courts reviewing decisions of . . . local administrative agencies' must be brought by means of that process.

*O.S. Advertising Co., 267 Ga. at* 726 (Carley, J., dissenting). See also *King v. City of Bainbridge*, 272 Ga. 427 (1) (531 SE2d 350) (2000). "An administrative agency is a governmental authority, *other than a court and other than a legislative body*,

2

which affects the rights of private parties through either adjudication or rulemaking." *Dept. of Transp. v. Del-Cook Timber Co.*, 248 Ga. 734, 739 (3) (e) (285 SE2d 913) (1982). I question how a local City Council, an elected body, can be labeled an "administrative agency," though I acknowledge that our Supreme Court appears to have done exactly that in *Hamryka* and its predecessors:

> Here, the three counts of Appellants' complaint . . . sought to invalidate the zoning decision of the Dawsonville City Council because, in making its decision, the council allegedly failed to abide by certain local ordinances and state laws. Thus, Appellants' complaint asked the superior court to review a decision of a local administrative agency, and they are now appealing the decision of the superior court.

*Hamryka*, 291 Ga. App. at 125 (1).

I believe that we must also strive to reconcile OCGA § 5-6-35 (a) (1) with OCGA § 5-6-30, which directs us to construe the Appellate Practice Act in such a manner as to reach the merits of cases brought to us "except as may be *specifically* referred to" in that article. (Emphasis supplied.)

When the above issues, which were discussed by Justice Fletcher, writing for the majority, and highlighted by a dissenting Justice Carley in *O.S. Advertising Co.*, are combined with our Supreme Court's instruction to give statutory text its

3

"ordinary, logical and common meanings," it is difficult to reconcile this result. (Citation and punctuation omitted.) *McKinney v. Fuciarelli*, ____ Ga. ____, *1 (Case no. S15G1885, decided April 26, 2016).

However, "this Court has no authority to overrule or modify a decision made by the Supreme Court of Georgia, as '[t]he decisions of the Supreme Court shall bind all other courts as precedents.'" *Pak v. Ga. Dept. of Behavioral Health & Developmental Disabilities*, 317 Ga. App. 486, 488 (731 SE2d 384) (2012) (quoting Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI). Our job is to apply binding precedent, and the binding authority dictates that all zoning cases must be appealed utilizing the discretionary procedures pursuant to OCGA § 5-6-35 (a) (1).